UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KREG SAMUAL PERREAULT,

    Plaintiff,

v.                                                 Case No. 1:14-cv-942

COMMISSIONER OF SOCIAL         Hon. Ray Kent
SECURITY,

    Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on December 19, 1962 (AR 160).[1] He completed the 12th grade, and had past employment as a mill hand in a paper mill (AR 172-73). Plaintiff alleged a disability onset date of July 1, 2010 (AR 160). He identified his disabling conditions as: right hand crushed; both knees "grinding bone on bone"; bursitis in both knees; bone spurs in both shoulders; arthritis in hand, shoulder and both knees; hypertension; kidney stones; mildly dyslexic; borderline obsessive-compulsive behavior; and, delayed emptying of common bile duct (AR 171). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 11, 2013 (AR 13-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July

3

1, 2010, and that he met the insured status requirements of the Social Security Act through December 31, 2015 (AR 15). At the second step, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease; s/p crush injury to the right hand; shoulder bursitis; and obesity (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can engage in frequent, but not constant, handling and fingering with the right dominant upper extremity, frequently reach overhead bilaterally, occasionally kneel, crouch, crawl, stoop, climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to unprotected heights and dangerous moving machinery.

(AR 16). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 21).

At the fifth step, the ALJ determined that through the date last insured, plaintiff could perform a significant number of jobs in the national economy (AR 21-22). Specifically, plaintiff could perform the following sedentary, unskilled jobs in the State of Michigan: cashier (55,000 jobs); fast food worker (62,000 jobs); and mail clerk (2,400 jobs) (AR 21-22). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2010 (his alleged onset date) through April 11, 2013 (the date of the decision) (AR 22).

### III. ANALYSIS

Plaintiff's brief did not include a Statement of Errors "setting forth the specific errors of fact or law upon which [p]laintiff seeks reversal or remand" as directed by the Court. *See* Notice (docket no. 8). Rather, plaintiff set forth a generic issue on appeal:

> **The Commissioner erroneously failed to give appropriate weight to the opinions of the medical experts, violated agency rules, failed in his duties to provide a full and fair hearing and misapplied the law.**

The Court has gleaned three errors from plaintiff's brief and will address each in turn.

> **A.    The ALJ failed to properly evaluate the opinion of examining physician Stephen D. Montes, D.O.**

Plaintiff contends that the ALJ failed to properly evaluate independent medical examiner Dr. Montes' February 25, 2013 report (Exhibit 20F) (404-423). In this report, Dr. Montes concluded that plaintiff's limitations included: lifting and carrying no more than 5 pounds; sitting a total of one hour in an 8-hour workday; standing/walking a total of one hour in an 8-hour workday; and using a cane and knee braces to ambulate (AR 405). In the narrative addressing plaintiff's "Work Capacity," Dr. Montes stated that plaintiff "is incapable of any gainful employment" and that his "activities should be limited to ADL's only [sic] not employment or work activities" (AR 421). The doctor also suggested that plaintiff be given permanent restrictions of

> no lifting greater than five pounds above chest level, no bending, no squatting, no kneeling, no crawling, no stair climbing, no vibratory tools or activities, no repetitive activities, no ladder climbing, no unprotected heights, no reaching overhead and walking to tolerance.

(AR 421).

The ALJ addressed Dr. Montes' report as follows:

> The undersigned accords minimal weight to the medical source statement at Exhibit 20F, as it is completely unsupported by the evidence of record and is in conflict with other evidence of record, including results of both the claimant's physical consultative examination and functional capacity evaluation. In addition, this opinion was based on a one-time examination of the claimant, which was specifically ordered by the claimant's attorney. Moreover, according to this opinion, the claimant "should be limited to activities of daily living only, not work or employment type of activities" (Exhibit 20F, p.2). According to Social Security

5

> Ruling 96-5p, the determination as to whether an individual's impairments preclude work activity and, thereby, render an individual disabled is reserved solely to the province of the Commissioner of Social Security. For these reasons, the undersigned finds that this opinion is not entitled to significant consideration.

(AR 19-20).

Because Dr. Montes was a non-treating physician, the ALJ was not under any special obligation to defer to the doctor's opinion or to explain why he elected not to defer to it. *Karger v. Commissioner*, 414 Fed. Appx. 739, 744 (6th Cir. 2011). *See Peterson v. Commissioner*, 552 Fed. Appx. 533, 539 (6th Cir. 2014) (examining psychologist's opinion is not entitled to any special deference). Nevertheless, the ALJ did provide an explanation for the weight assigned to Dr. Montes' opinion, noting that the opinion conflicted with a physical examination performed by Donald Sheill, M.D., conflicted with a functional evaluation performed by Ms. Boersma, was generated by plaintiff's attorney, and set forth a legal conclusion that plaintiff was disabled.

Dr. Sheill's physical examination performed on April 10, 2012 (Exhibit 12F) indicated that plaintiff's right knee was his "primary limiting issue" and that the doctor was "not confident" that plaintiff was "fit for unrestricted manual labor at this point" (AR 19-20, 360, 362). Dr. Sheill stated that while plaintiff had an antalgic gait with his right leg, the clinical evidence did not support the need for a walking aid (AR 364).[2] In addition, while plaintiff was partially unable to "squat & arise from squatting," he could perform the other listed orthopedic maneuvers (e.g., sit, stand, bend, stoop, carry, push, pull, and climb stairs) (AR 363). These opinions conflict with Dr. Montes' extreme limitations.

---

[2] The Court notes that the doctor's conclusions are supported by plaintiff's testimony, i.e., when the ALJ asked plaintiff if he needs to use a cane, plaintiff stated that he has not used one (AR 44).

In addition, the ALJ referred to a functional evaluation from November 21, 2012 (Exhibit 17F) performed by Ms. Boersma, an occupational therapist (AR 19-20, 387, 391). Ms. Boersma found that plaintiff could, at a minimum, perform light work and that due to his limited ability to walk and stand, plaintiff "would have to alternate between standing, walking and other tasks" to be able to tolerate light work for an 8-hour workday and 40-hour week (AR 19-20, 387). In addition, the examiner found that plaintiff exhibited "self limiting behavior" on 24% of the tasks, i.e., he stopped the task before a maximum effort was reached (AR 19, 387). The evaluation explained that self-limiting behavior greater than 20% indicates a psychosocial issue (fear of reinjury, anxiety, or depression) or an attempt to manipulate the test results (AR 387). While Ms. Boersma's opinion can be considered as evidence from a medical source, it is not entitled the weight given to the opinions of doctors. *See* 20 C.F.R. § 404.1513(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). In this instance, the ALJ properly considered Ms. Boersma's examination as "other" evidence in the medical record which conflicted with Dr. Montes' opinion (AR 19-20).

The ALJ also discounted Dr. Montes' opinion because the examination was arranged by plaintiff's attorney. As the Sixth Circuit noted in *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n. 8 (6th Cir.1989), "[t]here is nothing fundamentally wrong with a lawyer sending a client to a doctor, especially when the capacity of that client to care for himself is questionable." Courts have recognized that the results of a consultative examination should not be rejected solely because it was arranged and paid for by the plaintiff's attorney. *See Hinton v. Massanari*, 13 Fed. Appx. 819, 824 (10th Cir.2001) ("An ALJ may certainly question a doctor's credibility when the opinion, as here,

was solicited by counsel . . . . The ALJ may not automatically reject the opinion for that reason alone, however."). Thus, the fact that plaintiff's attorney referred him to Dr. Montes cannot itself justify the ALJ's decision to give minimal weight to Dr. Montes' opinion. However, the ALJ was entitled to consider the circumstances of plaintiff's consultation with Dr. Montes.

> [O]pinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

*Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013). Here, the ALJ could take the source of the doctor's referral into consideration. *See Tyler v. Commissioner of Social Security*, No. 1:13-cv-277, 2014 WL 1052627, at *4 (W.D. Mich. Mar. 18, 2014) ("It was entirely appropriate for the ALJ to note that Dr. Montes had examined plaintiff on a referral from plaintiff's attorney and that the purpose of the examination was to generate evidence in support of plaintiff's claims for DIB and SSI benefits.") (collecting cases).

Finally, the issue of whether plaintiff was capable of performing gainful employment is a matter to be decided by the Commissioner, not Dr. Montes. The ALJ was not bound by a doctor's conclusion that plaintiff was disabled or unable to work. *See* 20 C.F.R. § 404.1527(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of

the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

In summary, the ALJ's evaluation of Dr. Montes' opinion is supported by substantial evidence. Accordingly, plaintiff's claim of error will be denied.

> **B.     The ALJ improperly evaluated plaintiff's credibility by concluding that he stopped working when the plant closed rather than considering his long work history**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, plaintiff contends that the ALJ erred in evaluating his credibility because instead of applying plaintiff's long work history as lending support to his credibility, the ALJ relied on the fact that plaintiff "only stopped working when the plant closed" (AR 17). Plaintiff's Brief (docket no. 10, PageID #473). Contrary to plaintiff's contention, the ALJ considered his long work history in the credibility determination, stating in pertinent part:

> While the claimant sustained a serious crush injury to his right hand in August 2000 (Exhibit 3F, p.9), the biggest factor that limits his credibility regarding his alleged inability to work is that, despite this injury, he continued to work for years performing heavy physical labor and lifting heavy weights (up to 100 pounds), albeit mostly with his left hand. Moreover, he stopped working only when the plant closed approximately ten years later and not because his injury precluded him from completing his assigned tasks. . . .
>
> The undersigned also notes other factors impacting the claimant's credibility. For example, while the claimant alleges significant limitations in his tolerances for sitting, standing, and walking, there is an absence of any significant medical treatment for these complaints. Thus, the degree of symptomatology reported by the claimant appears to be in excess of the objective medical findings. More specifically, the claimant reports a significant deterioration of functional capacity from when he was working a full-time job, including lifting heavy weights, climbing on top of three-story machines, and walking extensively in May 2009 to being unable to sit, stand, or walk for any length of time in 2010, with no objective evidence to support such a deterioration. To the contrary, objective findings reveal mild to moderate degenerative changes at the most and, as noted previously, the functional capacity evaluation report noted self-limiting behavior by the claimant. While the undersigned credits the claimant with a great and consistent work history and finds that he cannot perform his past work any longer, the evidence does not support complete work preclusion, as detailed below.

(AR 17, 19).

The record demonstrates that the ALJ addressed a number of factors in evaluating plaintiff's credibility, including his work history. There is no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error will be denied.

### C. The ALJ improperly evaluated plaintiff's credibility by making an improper inference from his failure to seek medical treatment

In evaluating a claimant's credibility with respect to the intensity and persistence of symptoms, the ALJ considers the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2).[3] The regulations further provide that "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms" including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms" and "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms." *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v).

Here, the ALJ noted that plaintiff obtained only minimal treatment for his degenerative joint disease and spondylosis:

> The objective evidence of record shows that the claimant has mild degenerative joint disease in the left knee, mild to moderate degenerative joint disease in the left hip, and mild spondylosis at L3-L4 of the lumbar spine (Exhibit 9F, pp.25-3l). Yet, the claimant has received minimal medical treatment for any of these conditions. He had a left knee lateral meniscus tear, synovitis, subluxation of the patella with patellofemoral degenerative arthritis for which he underwent an

---

[3] 20 C.F.R. § 404.1529(c)(2) provides as follows:

Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

11

> arthroscopy, arthroscopic partial synovectomy, and arthroscopic lateral release in June 2003 (Exhibit 3F, p.l). Since that time, there is no documented evidence of regular, ongoing treatment for his knee. However, notes from the claimant's primary care physician do reveal that in January 2012, the claimant noted some worsening pain in his knee, but acknowledged that it was not locking up or giving out (Exhibit 11F, p.3). On examination, it was noted that the claimant's right knee had a small effusion and that his range of motion was intact (Exhibit 11F, p.4).

(AR 18).

Plaintiff contends that the ALJ improperly evaluated his credibility because the ALJ failed to clarify the record regarding plaintiff's multi-year lapse in treatment for his knee, back and joint impairments. Specifically, plaintiff contends that the ALJ made an improper inference in violation of Social Security Ruling (SSR) 96-7p, which provides in pertinent part that:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p.[4] Such explanations could include the individual's inability to afford treatment or failure to take prescription drugs due to side effects that are less tolerable than the symptoms. *Id.*

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

Here, the ALJ inferred that plaintiff's claim of "significant limitations in his tolerances for sitting, standing, and walking" was not credible, in part, due to the absence of "significant medical treatment" for these limitations (AR 19). While the ALJ was required to consider any explanations for plaintiff's failure to seek out medical treatment, plaintiff has offered none for the ALJ to consider. There is no basis to reverse the ALJ's decision. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated:  September 22, 2015          /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge